Very well, Mr. Leopold, we'll hear from you first. Thank you, Your Honor. May it please the Court, I represent the appellants in this case, which are the benefit plan, the plan administrator, and the insurer of the plan, Unum Life Insurance Company of America. This case involves a single claim for benefits due under ERISA, Section 502A1B. There are no breach of fiduciary duty claims under A3 or A2. The plaintiff's brother was a participant in a plan through his employer, Schneider Electric, when he passed away. He had enrolled in life and accidental death benefits under the employer plan, naming his sister as his beneficiary. Upon his death, Unum paid the life insurance benefits, but denied his claim for accidental death benefits. During the claims process, Unum investigated the claim by gathering the police report and other documents related to the accident. Its investigation revealed that Mr. Boyer was in a car wreck that was witnessed by five individuals, including an off-duty police officer who had been an officer for almost 25 years. Mr. Boyer's car approached the five cars from the rear and attempted to pass them. The speed limit at the site of the crash was 35 miles per hour, and it was marked as a no-passing zone. The off-duty officer estimated the speed of Mr. Boyer at the time of the wreck as 80 miles per hour, more than twice the posted speed limit, and much faster than the cars he was trying to pass. I need to interrupt you, Mr. Leopold, but we're familiar, I think, with the facts of the case, and there are two major legal issues, at least, in the case involving the meaning of crime and the meaning of accidents, so you might want to proceed to those if you're prepared to do so. Absolutely, Your Honor. There are two interpretations at issue. What does crime mean, and what does accidental means mean? Neither term was defined explicitly in the plan, but the plan included delegation language, delegating to UNUM the authority to decide and interpret undefined terms of the plan. Deference is an important concept in this case, as I'm sure Your Honors are familiar with deference under ERISA, so I won't belabor the point, but under the deference standard, it's a two-step analysis. You look at the proffered definition, and you determine if it was reasonable, and if it was reasonable, if the decision that was arrived at based on that definition was supported by substantial evidence. Reasonableness under the... Counsel, I was wondering, could you enlighten me on what you think is the significance of the claims manual assertion that traffic violations don't count as crimes? Well, Your Honor, we don't believe that the claims manual alters the analysis here, and we make the same arguments that were accepted by the Tenth Circuit in the Caldwell case, which examined the exact same claims manual. The decision in that case by the Tenth Circuit, you know, said that the plan document does not... Or that the claims manual, I'm sorry, does not purport to be definitive and has substantial play in the joints. Further... I noticed that phrase, what is the substantial play? I think that it means, Your Honor, that it's not meant to be definitive, it's not meant to lay down explicit rules, it relies on the bolded reminder at the bottom that each claim is unique and should be evaluated on its own merits. The actual policy governing the claim must be referenced, and so I think that the facts obviously are very different in very different cases, and so you have to... Can you help me with the function of a claims manual? To whom is it directed, and in what context is it employed? The claims manual is not part of the plan document, that is very clear. The claims manual is an internal document that is not distributed to participants or outside the company, it's distributed to claims examiners, and the purpose of it, I think, is one of the requirements under the ERISA claims regulations is that insurers and decision makers of claims are supposed to try and make consistent decisions on claims, so they're not jumping all over the map, making different decisions in different cases that are similar, and I think that the purpose of the claims manual is to provide some structure and some relative guidance about how a claims examiner goes about their job. However, it does not override the terms of the plan, and the Tenth Circuit made this point explicitly that the claims manual is not part of the plan, and it cannot override the clear terms of the plan, and it's cited in the Eighth Circuit case to support that analysis. What is it, and how is it relevant in this case, is it some evidence of what the plan means, or exactly how would you characterize the impact, if any, of this claims manual in this case? I would say that it has none, and the reason is that even if you look at the strict language of the claims manual, this was not a mere traffic violation. It was a misdemeanor under state law, and it was a crime. It was going more than twice the speed limit, trying to pass five cars at one time in a no-passing zone. It was not a mere traffic violation. There's categories under many state laws, including Missouri, that categorizes certain violations as something less than crimes. For example, in Missouri, if you're speeding by less than five miles per hour over the speed limit, that's not a crime. That's categorized as something different. Can I follow up on that? I understand that the O&M doesn't necessarily go to how the state has defined a particular violation. In Missouri, I think that helps your argument, but it may not help in another state, where the violation might be called something different. Correct. We rely on Missouri law just to show how it would have played out under Missouri law, but it's not supposed to be definitive, because, again, different state laws differ throughout the 50 states, and one of the main purposes of ERISA is to be more standardized across the country, which is why the dictionary definition is the one that courts typically enforce. I understand that your position in response to the opposing counsel saying, well, one mile over the speed limit, and you could lose your accidental benefits. I understand, based on your position, five miles over, that's an infraction. I think I'm hearing you to say that under your interpretation of the term crime, that would not count. What about six or seven? Is that the line that we're talking about here, that five miles over is a traffic violation that would not qualify as a crime under this interpretation, but six to 10 would be a crime? Your Honor, those are certainly lines that can be drawn in different cases, and that's what courts do, is they draw lines. The important point is that in this case, it was not six to seven miles per hour over. I understand. I'm trying to understand. I'm sorry to interrupt you, but I'm trying to understand the scope of this definition of crime. It's really what we're trying to get at, and I get it that the evidence indicates somewhere around 40 over, but what about that six to 10, six to nine, six to eight? I think that, Your Honor, if you turn to the language in the plan that talks about the crime must cause or contribute to the actual death. I think it's a bit of a red herring to say, okay, somebody is clocked going six miles per hour over at the time of a fatal accident. Did that really cause or contribute to the accident? I think that's where it comes into play. Similar arguments could be made about, okay, it's a crime, perhaps, to drive on a suspended license, but a subsequent investigation shows, well, somebody was driving on a suspended license, but did that cause or contribute to the actual accident? No, it didn't. I think that most of these cases are going to be caught on the cause and contribute language. Here, we had a police report that said explicitly that probable contributing circumstances to the wreck were excessive speed and trying to pass in a no-passing zone. There's substantial evidence there that in this case, that those actions caused or contributed to the wreck, that evidence wouldn't be there in a case where someone was going five miles per hour over the limit or six or seven miles per hour over the limit. As I understood it, even if there were evidence that a person caused an accident by going six miles over the speed limit, we don't know yet whether UNUM would classify that as a crime. Correct. They would have to decide in the first instance and give an explanation, wouldn't they, before a court then evaluated the reasonableness of the determination? That is correct, Your Honor. We don't know how UNUM would decide that case because it's not the case that is presented. The other two cases that are on record addressing the same situations are the Umergar and the Caldwell case. In one of those cases, the Caldwell case, the wreck, the person was determined to be going about 75 miles per hour in a 35-mile-per-hour zone. In the Umergar case, it was a similar ... I think that case actually involved a car chase where he was evading a police officer, so it's a little bit different. The point is, there are no cases on record of UNUM attempting to enforce this in these sort of circumstances where it's barely over the limit or something. You have four minutes remaining. Would you like to address whether the administrator reasonably defined accidental means in terms of reasonable foreseeability as opposed to the Wickman standard? I'll just speak briefly on that, Your Honor. The King case from this court, an en banc case, talked about these two competing standards for accidental means. The important point here is this is an undefined term. There's nothing special about it. UNUM is allowed to decide what definition it's going to use for undefined terms. The Wickman standard may be a reasonable standard, but it's never been said by this court that that is the only reasonable definition. In fact, that same definition that UNUM used has been accepted by at least two courts, the First Circuit and the Seventh Circuit, as reasonable, so there's no reason that that's not a reasonable definition. I suppose the argument would be maybe that it reads out too many things from the concept of accident because people reasonably expect to be in auto crashes and so forth. I think, Your Honor... Would it swallow the rule, I guess? Yeah. I suppose you have to evaluate it in terms of the facts of this case, which is that it's reasonably foreseeable that when you're passing on a two-lane road at twilight and you're going 80 and trying to pass five cars at once, that something could go wrong there. I think that that's not an accident when that happens. If you willingly go into a situation and put your life at risk, that's not an accident. That's knowledgeably taking on that risk. That's the definition that's been accepted by the First and the Seventh Circuit and seems to us to be a reasonable definition. Did Unum take the position that the Wickman standard should apply when the district court remanded? No, Your Honor. We did not take that position. What we said was if the court determined that the Wickman standard was going to apply, Unum did not decide it under that standard, did not address that standard, so it needed to be remanded to address that standard and whether the evidence met that standard. All right. You have a minute and a half remaining. Would you like to save that for rebuttal? I will, Your Honor. Thank you. All right. Very well. Thank you. Mr. Meadows, we'll hear from you. Thank you, Your Honor. May it please the court, I'm Mr. Meadows and I represent the appellee, Amber Boyer, in this case. Despite its surface's appearances, this case is really a rather simple one. We have detailed arguments over what is the meaning of an accident, over whether the crime exclusion should or should not apply, but this all comes down to one simple question. Did the trial court err in concluding that Unum's decision to deny plaintiff's claim for her brother's accidental death benefits was unreasonable? And that comes from the King v. Hartford life case that this court decided back in 2005. Reasonableness of the decision is the overarching standard this court looks to, and when we look at this case, there's really two separate ways that we can get toward upholding the district court's decision. The first one, counsel for Unum has already talked about, and that's the approach of whether or not the crime exclusion and its use here is proper, and Unum's definition of accident is proper. But there is a second way that this court gets to and can uphold the district court's decision. That is that irrespective of the policy's crime exclusion and its definition of accident, Unum's decision is not supported by substantial evidence. In other words, what Unum did here was simply pick and choose among competing evidence with doing no investigation and no analysis of the facts. And since we addressed some of those issues a few moments ago, I'd like to look at that right now. The case law that brings this point out is from the sixth circuit. It's the Glenn versus Met Life case, 461 Fed Third 660, sixth circuit back in 2006. And it's cited in our brief. And it talks about how if the plan administrator does a poor job of investigating and selects among competing witnesses while ignoring other evidence altogether, the decision can per say be unreasonable. And when you look at the King case in this case prior jurisprudence, that's an element that's available here as well. And let's look at what Unum did here. Mr. Leopold has admitted that what Unum did is it looked at a police report and an office of medical examiner's report. In that police report was five witnesses. The medical examiner's report was a retelling that the medical examiner had. The medical examiner classified this as an accident. And the cause of death as accidental. Of the five witnesses, only one of those five witnesses, the police officer, made any claims as to what speed the decedent was going. What you have here is Unum choosing on very paltry evidence with very limited investigation and interpretation that fits denial. And I'd like to turn to look at the crime exclusion for a few moments. Well, wait a minute. Before you do that, are you saying there's not substantial evidence to support the conclusion that the driver was traveling 80 miles an hour in a no passing zone? Yes, your honor. The Darvell case requires that by this court from 2010 requires that there be substantial evidence to support Unum's decision. Substantial evidence is defined as more than a scintilla but less than a preponderance. And when you look at the evidence that was collected here, it's very limited, particularly in light of what you see in the Caldwell case and the case out of the 10th circuit. In both of those cases, there was substantial investigation that was done as to speed or substantial number of witnesses that had established what the behavior of the decedent was that was later classified as criminal. All right. Thank you. And your honor, when we look at the crime exclusion in this case, we're not acting in a vacuum. The reasonableness of Unum's crime exclusion is defined by the five factors this court set forth in the Finley versus special agents mutual life case. And on all five of those factors, the crime exclusion used by Unum fails to pass the reasonable test. What I'd like to look at is a couple of those factors where it's the most obvious. First, is this definition consistent with the goal of the plan? And when you look at the briefing that Unum has done here, they make the argument that the goal is not to pay claims for risky behavior. But that's not what the goal of the plan is. Case law defines the goal of the plan to be the same as the goal of ERISA. That is to protect the interests of the beneficiaries of the plan and encourage uniform decision making across the plan. Here Unum's decision making is anything but uniform. First, they've offered us multiple definitions of what a crime is, none of which are incorporated into the plan. In some situations, they say it's defined by state laws. In others, they say it's defined by a dictionary definition. But that's kind of a circular argument, because the dictionary definition says something is a crime if it's a violation of the law. What we've done here, and Unum has done with its crime language and its crime exclusion, particularly in light of what it says in its claims manual, is allow itself to have a floating definition of crime that it can use to fit whatever circumstances it has for denial. Let me show you an example of that. Unum tried to use this same definition in the Harrison versus Unum Life case out of the District of New Hampshire in 2005. And in that case, the individual was accused of committing DWI. Well, in New Hampshire, for some unknown reason, DWI is not a crime. It is merely a violation. So in that case, Unum said, don't look at state law. Don't look at that definition. Instead, look at, is this something that would normally and typically be considered a crime? And the court allowed Unum to use the definition in that case from a dictionary, but noted how it is very questionable where something that lacks the pedigree, and that was the phrase the court used, of DWI would classify as a crime under the definition. So Unum here is using a flexible definition that it can interpret any way it wants to exclude coverage. And then it has the claims manual there as its clawback to try to figure a way around it in other circumstances. I think... So how would you say that crime is defined here? What should be the definition? Well, Your Honor, I don't think it's appropriate for either the district court or appellee to offer a definition of crime, because that's something that Unum as the plan administrator gets to write up. But I think we can talk about what a crime is not. Crime needs to be seen like, and a crime exclusion, like all the provisions of the benefits plan through the eyes of the policyholder. The policyholder that, if they look at their plan, would know what is and is not coverage. And so the crime exclusion should include within it a definition that would make sense to the average policyholder without any special training or legal education as to what is meant by that phrase. And if you look back at the district court's opinion, the average policyholder is not going to think that traffic violations as a category might fit within that. By the definitions Unum has proffered here, you astutely mentioned earlier, they could classify someone going only five or six miles an hour over the speed limit as being subject to the crime exclusion. I think it's more likely to come up in the situation of someone jaywalking in a street, something that happens on a regular basis, or someone negligently simply missing a stop sign on a road and being T-boned. All of those are potential applications of the crime exclusion Unum is trying to use here and shows how loose the definition and how unreasonable the definition Unum has posited here is to use. Does that address your question, Your Honor? How do we know what the average policyholder would view the term crime? Well, I think the court has to use common sense in that and the common understanding of individuals. I also think that the Unum policy manual gives us some guidance to that. Obviously, Unum's claims manual itself does not typically consider traffic violations as crimes. This was an issue that the district judge addressed in his opinion and what the average policyholder would genuinely think. I think a good observation here is Judge Cardozo's, or Justice Cardozo, my apologies, analysis that he did in the Phoenix life case, one of the early ones on the accidental mean versus accidental results case. He talked about how we all know what an accident is and how lawyers get involved and insurance get involved. I think that's true with crime. The average person without legal training has their idea of what a crime is and it only becomes complicated and difficult to determine if someone has committed a criminal act or died in the course of criminal conduct when lawyers and insurance are involved. One of the other areas in which the crime exclusion has a severe problem is the third factor of the Finley test. And that's that it conflicts with the substantive and procedural requirements of ERISA. And this gets back to the point we were talking about, Your Honor. Section 20 USC section 1022A talks about what the expectations of the average plan participant should be. Here, an average plan participant would not expect that traffic accidents or traffic violations could be defined as a crime. What if the average plan participant has at some point in her life received a speeding ticket and had to fill out a document saying that she pleads guilty and mailed it in to the criminal court of the county and paid a fine? Would that reasonable participant then at least have a question whether I might run into this exclusion if I'm going 45 miles and over the speed limit and have an accident? A lawyer might think that. Reasonable participant who has had speeding tickets. Yes, Your Honor. The reasonable participant who has had speeding tickets. My experience, and that's all I can go with here in dealing with the average reasonable person, comes from when you ask people in jury selection if they have a criminal conviction or have ever been charged with a crime, and uniformly, no one, no matter how bad their traffic violations is, no matter if it's a class A misdemeanor, almost never raises their hand. So from an unempirical experience of just me as a trial lawyer, apparently people don't think like we lawyers do on that. There may be a few that do, but the average plan participant would not think that a traffic violation would exclude them under the crime exclusion. And I think we can see that because of how narrow that limits the scope of accidental life coverage. It is very foreseeable for a person, particularly a young person like Mr. Boyer, that he might die as part of a traffic incident. And that's even foreseeable for older individuals like myself. When you look at that, we would expect there to be coverage if we die in a traffic accident. Well in every traffic accident, at least one person under the definition that Unum is proffering has likely committed a crime. Most people... So you have 30 seconds left. Could you address what's wrong with Unum adopting a reasonable expectation standard for the term accidental means, consistent with at least two other circuits? The King case didn't decide that, left it open. Why isn't that a reasonable interpretation of accidental means? Sure, there's several reasons, but just in the limited, the accidental means versus accidental results test. Accidental means narrows the focus too much, where we start focusing in on determining based off of conduct. It runs into the problem Judge Cordozo mentioned in the Landris versus Phoenix Metropolitan Life case, where the focus should instead be on what is the highly likely result of the conduct to occur. Additionally, I just think that Unum is plain wrong on saying this court has not adopted the Wickman test. King doesn't go fully there, but if you look at its prodigy, the McClellan case that's from this court, and then a host of district court cases we've cited in this brief, all this court has not done is said the magic word of we adopt Wickman. It has used Wickman as the analysis on multiple occasions. It appears to be the binding precedent in this circuit, both based on at least three cases from your court, and then three or four cases from the district courts that are within the Eighth Circuit. All right. Thank you for your argument. Thank you, Your Honor. Mr. Leopold, we'll hear from you in rebuttal. Thank you, Your Honor. Judge Kelly, in answer to your question about how do we determine the expectations of the participants, the case law from the circuit is clear. You determine that by looking at the ordinary meaning as determined from a dictionary. That's the way you make sure that you're not using overly, you know, lawyerly phrasing or anything like that. You look to an ordinary definition. That's what Unum did, and that supports the outcome that was arrived at here. At the end of the day, this is not a close case. Your Honor, the deceased was going 80. He was effectively trying to do street racing. He was passing five cars at once on a two-lane road at an excessive rate of speed. The point of crime exclusions is that insurance is not supposed to transfer the risk of self-destructive behavior. This could have very easily been a tragic accident if he lost control and ran into one of those five cars and taken that car out and somebody in that car died or someone was ejected or something else. This is not a close case. He was acting in a self-destructive way, and that's the exact actions that a crime exclusion is supposed to address. I see that I'm out of time, unless your Honors have any other questions. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted.